IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID JORDT, | No. C 05-1409 SBA |
| Plaintiff, | |
| v. | **ORDER** |
| CLERKS AND LUMBER HANDLERS PENSION FUND, et al., | [Docket No. 32] |
| Defendants. / | |

This matter comes before the Court on the Motion for Partial Dismissal of Defendants Clerks and Lumber Handlers Pension Fund (the "Plan") and the Board of Trustees of the Clerks and Lumber Handlers Pension Fund (the "Trustees") ("Defendants' Motion for Partial Dismissal") [Docket No. 32].

Having read and considered the arguments presented by the parties in the papers submitted to the Court, the Court finds this matter appropriate for resolution without a hearing. The Court hereby GRANTS Defendants' Motion for Partial Dismissal.

## **BACKGROUND**

**A.     Factual Background[1]**

On or about January 7, 1980, Plaintiff David Jordt ("Plaintiff") was hired as a lumber clerk by Western Door and Sash, Inc. ("Western"), a company that owned a sawmill and produced a wide variety of finished wood products. TAC at ¶ 8. Plaintiff worked at Western continuously until it closed on

---

[1]The following facts are taken from Plaintiff's Third Amended Complaint ("TAC") and certain documents from the administrative record that were explicitly incorporated by reference into Plaintiff's Third Amended Complaint and either attached as exhibits to the Third Amended Complaint or as exhibits to the Declaration of Isidore Loth, the Plan manager for the Clerks and Lumber Handlers Pension Fund. Both parties concede that the Court may take judicial notice of these documents without converting the instant motion into a motion for summary judgment. *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).

August 31, 2003. *Id.* While employed by Western, Plaintiff was promoted from clerk, to assistant foreman, and finally to foreman. *Id.* During the entirety of his employment with Western, Plaintiff was a member of the Clerks and Lumber Handlers subdivision of the Laborer's International Union of North America ("Union"). *Id.* at ¶ 9. Plaintiff was also a participant in the Clerks and Lumber Handlers Pension Plan (the "Plan") and, while a participant, Western made contributions to the Plan on his behalf. *Id.* Starting in January 2001, Plaintiff began making contributions to the Plan himself out of his gross pay. *Id.* Plaintiff and his wife were to be the beneficiaries of all contributions to the Plan upon Plaintiff's retirement from the Union. *Id.* at ¶ 10.

The Plan provides for several different types of monthly retirement benefits to vested participants, including a "normal" or "Regular Pension" at age 65 and a reduced "Early Retirement Pension" at or after age 55. *Id.* at Ex. A. The Plan also provides for an unreduced (*i.e.*, equivalent in amount to a Regular Pension despite commencing earlier than age 65) "Service Pension" to vested participants under age 65 who retire with at least 25 years of pension credit. *Id.* The Plan defines "Retirement" as follows:

> To be considered retired under this Plan, a person must withdraw from employment for wages or profit in excess of the acceptable Social Security limits on any type of work in the lumber industry or mill cabinet industry.

*Id.*

Plaintiff was aware that these were the terms and conditions of the Plan. *Id.* at ¶ 11. In fact, at various times throughout Plaintiff's employment with Western, both the Plan, through its Trustees, administrators, and other fiduciaries, and the Union, represented to Plaintiff, both orally and in writing, that Plaintiff would receive benefit payments in the form of a "service pension" from the Plan if Plaintiff completed twenty-five years of eligible service as a union member before retiring from the Union. *Id.* at ¶ 11. The Plan and the Union also represented to Plaintiff, both orally and in writing, that he would not be considered "retired" within the meaning of the Plan if he accepted post-retirement employment within the "lumber industry" or "mill cabinet industry," and that if he accepted such employment, his pension benefits would be terminated. *Id.* at ¶ 11, Ex. A. The Plan documents also stated that if

Plaintiff's pension benefits were terminated under such circumstances, Plaintiff would have to wait at least twelve months without working in the lumber or mill cabinet industries before he could again be considered "retired" and payments would resume. *Id.* The terms "lumber industry" and "mill cabinet industry" were not defined in any of the Plan documents that Plaintiff received during the course of his employment with Western. *Id.* at ¶ 11.

In 2002, Plaintiff began preparing for his retirement. *Id.* at ¶ 12. On or about May 2002, Plaintiff expressed to Brad Jones ("Jones"), a Vice President of Western, his desire to retire from the Union and to collect benefits under the Plan while continuing to work. *Id.* Jones, in turn, engaged in numerous conversations with Defendant Frederick Misakian ("Misakian"), a member of the Board of Trustees ("Trustees") for the Plan, regarding Plaintiff's intentions. *Id.* Misakian indicated that Plaintiff should send a formal letter to the Trustees requesting information. *Id.* On September 30, 2002, Plaintiff sent a letter to the Trustees requesting information as to the meaning of the term "industry" and inquiring as to what forms of employment would be covered by that term. *Id.* at ¶ 12, Ex. B. In the letter, Plaintiff specifically mentioned his intent to retire from the Union and to collect benefits under the Plan while continuing to work. *Id.* In specific, Plaintiff wrote:

> I have been planning for my retirement for some time and I still have one major consideration that I need information about. I would like to retire from the Clerks and Lumber Handlers Union 886, and begin receiving my monthly pension payments immediately upon my becoming eligible for the same. I would then like to begin working in some new capacity, perhaps in project managements or maybe in a new window service program with my current (which would then be my former) employer. These options would be a salaried position and not in any way affect union jobs available through the company, nor cross any union job description.
>
> I understand there may be some restrictions or consequences to my pension program if I continue employment with my present employer, even if it is in some new and different capacity. Please also provide to me information as to the issue of working with the 'industry' as it applies to my circumstances.
>
> I need a formal and accurate ruling to properly plan for my retirement and request such as soon as possible. I have been trying to get an accurate understanding of what I can and cannot do for additional employment after I retire from the Union.

*Id.* at Ex. B.

Misakian apparently spoke with Jones several times regarding Plaintiff's letter, acknowledged that the letter had been received by the Trustees, and represented to Jones that the Trustees would respond to the letter. *Id.* at ¶ 12. However, Plaintiff did not receive a response to his letter from the Trustees. *Id.*

In August 2003, Western closed. *Id.* at ¶ 13. At that time, Plaintiff had completed twenty-six years of qualifying service in the Union due to his employment with Western and his previous employment with another covered employer. *Id.* at ¶ 16. Plaintiff was subsequently hired by a new company, Evolution Window & Door Co. ("Evolution"). *Id.* at ¶ 13. Evolution's sole business is the sale and distribution of fiberglass windows and doors to retail dealers. *Id.* Evolution does not stock doors or windows. *Id.* Evolution does not handle, sell, or deal in lumber or "mill cabinets." *Id.* Further, Evolution is not covered by the Plan, does not contribute to the Plan, and does not have any unionized employees of any kind. *Id.* Additionally, Evolution does not consider itself to be part of the lumber or mill cabinet industry. *Id.* Accordingly, when Plaintiff accepted employment with Evolution, he believed that Evolution's business was not within the lumber or mill cabinet industries and that employment with Evolution would not prevent him from collecting his service pension under the Plan. *Id.* at ¶ 14.

On September 29, 2003, Plaintiff applied for his pension benefits from the Plan. *Id.* at ¶ 15. In his letter enclosing the application, Plaintiff wrote:

> I want to clarify my new employment to confirm that it would not disqualify me from receiving my service pension.
>
> I am employed by Evolution Door and Window. This company distributes wholesale windows and patio doors. The company has no union employees. I therefor anticipate that they are not in the 'industry' and I am eligible to receive my pension.
>
> If for any reason you determine I am ineligible, please provide detailed information as to why I do not qualify.

*Id.* at Ex. C.

On October 2, 2003, the Plan responded to Plaintiff's request by informing him that his application had been submitted to the Trustees for a "determination of prohibited employment." *Id.* at

4

¶ 17, Ex. D. On October 27, 2003, the Plan denied Plaintiff's request for benefits on the grounds that Evolution's business was within the lumber industry or mill cabinet industry. *Id.* at ¶ 18, Ex. E. The Plan's denial of Plaintiff's application did not further define the terms "lumber industry" or "mill cabinet industry" however. *Id.* Plaintiff thereafter retained counsel and appealed the Plan's denial of benefits. *Id.* at ¶ 18, Ex. F. His appeal made no mention of the September 30, 2002 letter. *Id.*

On March 4, 2004, the Trustees, through its Plan manager Isidore Loth, wrote to Plaintiff to inform him of certain information that it believed to be correct about Plaintiff's employment, and invited Plaintiff "to provide any clarifying information that [he] believe[d] would be relevant before it makes its final determination" of his appeal. *See* Loth Decl. at Ex. 1. Plaintiff's counsel responded by letter, but once again did not mention the September 30, 2002 letter. *Id.* at Ex. 2.

The Trustees subsequently informed Plaintiff that his appeal had been denied. TAC at ¶ 18, Ex. G. The Trustees set forth the rationale for their decision in a letter dated April 12, 2004. *Id.*

### B.  Procedural Background

On April 6, 2005, Plaintiff filed a Complaint against the Clerks and Lumber Handlers Pension Fund (the "Plan"), Ken Lusby, Jeff Milliman, Frederick W. Misakian, Tom Fogarty (collectively referred to as the "Individual Trustees"), and McMullan & Associates, Inc.

On June 7, 2005, Plaintiff filed a First Amended Complaint against the Plan, the Individual Trustees, and McMullan & Associates, Inc. The First Amended Complaint alleged the following causes of action: (1) denial of benefits in violation of 29 U.S.C. § 1132(a); (2) estoppel; and (3) failure to provide information in violation of 29 U.S.C. § 1132(c).

On July 20, 2005, the Plan and the Individual Trustees filed a Motion for Partial Dismissal and to Strike. On July 27, 2005, Defendant McMullan & Associates, Inc. filed a Motion to Dismiss or, in the alternative, to Strike.

In response to the Plan and the Individual Trustees' Motion for Partial Dismissal, Plaintiff conceded that his second cause of action for estoppel was deficient. However, he requested leave to amend his complaint to remedy the deficiencies identified in the Plan and the Individual Trustees'

5

Motion for Partial Dismissal and to Strike.

On October 5, 2005, the Court granted the Plan and the Individual Trustees' Motion for Partial Dismissal and to Strike and also granted McMullan & Associates, Inc.'s Motion to Dismiss or, in the alternative, to Strike.  Because it had not been conclusively established that Plaintiff could not state a viable estoppel claim based on the briefing before the Court at that time, the Court dismissed Plaintiff's estoppel claim without prejudice.

On October 11, 2005, Plaintiff filed a Second Amended Complaint.  Then, pursuant to stipulation and Court order, Plaintiff filed the instant Third Amended Complaint on October 24, 2005. Plaintiff's Third Amended Complaint is asserted against the Clerks and Lumber Handlers Pension Fund (the "Plan") and the Board of Trustees of the Clerks and Lumber Handlers Pension Fund (the "Trustees") on the following causes of action: (1) a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B); (2) a claim for benefits under an estoppel theory; and (3) a claim for statutory penalties under ERISA § 502(c), 29 U.S.C. § 1132(c).  Plaintiff's second cause of action for estoppel is premised on the Plan and Trustees' failure to respond to his September 30, 2002 letter.

On November 7, 2005, the Plan and the Trustees filed the instant Motion for Partial Dismissal of Plaintiff's Estoppel Claim.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted only if it appears beyond a reasonable doubt that the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  For purposes of such a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded factual allegations are taken as true.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest & Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).  All reasonable inferences are to be drawn in favor of the plaintiff.  *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296 (9th Cir. 1997).

When a plaintiff attaches exhibits to the complaint, those exhibits may be considered as part of

6

the pleadings. *Cooper v. Bell*, 628 F.2d 1208, 1210 n. 2 (9th Cir. 1980). The Court may also consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading" as well as documents crucial to the plaintiff's claims, but not explicitly incorporated in his complaint. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir.1994); *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). When a plaintiff's claims are predicated upon a document, and the document has not been attached to the complaint, the defendant may attach the document to his Rule 12(b)(6) motion, even if the plaintiff's complaint does not explicitly refer to it. *Id.*

The court does not accept as true unreasonable inferences or conclusory allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *See Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of law and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim."); *Sprewell v. Golden State Warriors*, 266 F.3d 1187 (9th Cir. 2001); *McGlinchy v. Shell Chem Co.*, 845 F.2d 802, 810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to dismiss for failure to state a claim.").

When a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). The Court should consider factors such as "the presence or absence of undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments, undue prejudice to the opposing party and futility of the proposed amendment." *Moore v. Kayport Package Express*, 885 F.2d 531, 538 (9th Cir. 1989). Of these factors, prejudice to the opposing party is the most important. *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)). Leave to amend is properly denied "where the amendment would be futile." *DeSoto v. Yellow Freight Sys.*, *Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

7

8

# **ANALYSIS**

**A.   The Plan and Trustees' Motion for Partial Dismissal**

In their Motion for Partial Dismissal, Defendants move to dismiss Plaintiff's second cause of action with prejudice on the grounds that: (1) Plaintiff has not exhausted his administrative remedies and should not be excused from doing so; and (2) Plaintiff has not stated, and cannot state, a claim for estoppel.

**1.   Failure to Exhaust Administrative Remedies**

Defendants first argue that Plaintiff's estoppel claim must be dismissed because Plaintiff has failed to exhaust his administrative remedies. In the Ninth Circuit, plaintiffs seeking a determination of their rights under an ERISA plan are required to exhaust administrative remedies prior to initiating litigation. *Diaz v. United Agric. Employee Welfare Benefit Plan*, 50 F.3d 1478, 1483 (9th Cir. 1995); *Amaro v. Continental Can Co.*, 724 F.2d 747, 752 (9th Cir. 1984). This rule is an important one, as it ensures that the Court will have a complete administrative record on which to base its review.

In support of their Motion, Defendants point out that the administrative record before the Court makes clear that Plaintiff did not raise his estoppel claim, or even mention any facts pertaining to his estoppel claim, during the underlying administrative proceedings before the Trustees. Indeed, in all of Plaintiff's correspondence to the Trustees, there is no indication that Plaintiff ever mentioned the September 30, 2002 letter or the Trustees' alleged failure to respond to the letter.

Plaintiff concedes this fact in his Opposition, but nevertheless argues that he has exhausted his administrative remedies because his estoppel claim is merely a "theory of recovery" that is ancillary to his primary benefits claim and because Defendants "knew all of the relevant facts regarding estoppel during the process." Alternatively, Plaintiff contends that the exhaustion requirement should be excused, because pursuit of his estoppel claim in the underlying administrative proceedings would have been futile.

Neither of Plaintiff's arguments is persuasive and both are unsupported by the applicable law and facts. Indeed, Plaintiff assertion that he "need only exhaust claims, not theories or issues, as long as they

9

are based on evidence before the reviewing body," is directly contradicted by his admission that the evidence relevant to his estoppel claim was *not* before the Trustees.  Further, Plaintiff's reliance on *Bahnaman v. Lucent Technologies, Inc.*, 219 F.Supp.2d 921, 925-26 (N. D. Ill. 2002) is misplaced.  In *Bahnaman*, the district court in the Northern District of Illinois held that, *in the context of litigating a claim for benefits* under ERISA § 502(a)(1)(B), the litigant may assert an estoppel *argument* to show that the reviewing body's decision was arbitrary and capricious, provided that the estoppel theory is based on evidence or information that was before the reviewing body when it decided the underlying claim. *Bahnaman v. Lucent Technologies, Inc.*, 219 F. Supp. 2d at 925.  Unlike the instant case, the plaintiff in *Bahnaman* did not assert an estoppel cause of action.  In fact, the cause of action at issue in the case was a section 502(a)(1)(B) benefits claim, and the court made clear that the arbitrary and capricious standard of review applied, regardless of the type of argument plaintiff used. *Id.* at 923-4.  Thus, even under the reasoning in *Bahnaman,* Plaintiff could at most use his estoppel "theory" as an argument in support of his first cause of action, but only if the argument is based on evidence or information that was before the Trustees on appeal. *Id.* at 925. *Bahnaman* therefore provides *no* support for the argument that Plaintiff may assert an independent cause of action under an estoppel theory that might permit him to introduce evidence outside of the administrative record or alter the arbitrary and capricious standard of review.

Further, Plaintiff makes no effort to distinguish the two cases cited by Defendants – including one from this Court – holding that exhaustion of estoppel-based claims *is* required. *See Carl v. Steelworkers Western Independent Shops Pension Plan*, 2004 WL 2237705 at *4 (N.D. Cal. 2004) and *Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 356 F. Supp. 2d 877, 892-93 (N.D. Ill. 2005).

Additionally, there is no support for Plaintiff's argument that the exhaustion requirement should be excused in this case.  Although Plaintiff cites *Winterberger v. General Teamsters Auto Truck Drivers and Helpers Local Union 162*, 558 F.2d 923, 925 (9th Cir. 1977) for the proposition that the exhaustion requirement may be waived, *Winterberger* makes clear that waiver of the exhaustion requirement is a

10

rare exception, to be invoked only when it is clear that an administrative proceeding was "infected with fundamental procedural error." *Id.* There are no such allegations here. At most, Plaintiff has provided the Court with nothing more than a bare and conclusory assertion that exhaustion was futile, and thus the exception to the exhaustion requirement is inapplicable. *See Diaz*, 50 F.3d at 1485 ("[B]are assertions of futility are insufficient to bring a claim within the futility exception.").

In sum, Plaintiff has not shown that he has exhausted his administrative remedies. As such, the Court hereby GRANTS Defendants' Motion and DISMISSES the second cause of action with prejudice. Further, because Plaintiff has admitted that estoppel was never mentioned in his appeal, the Court HEREBY GRANTS Defendants' additional request that the Court bar Plaintiff from raising his estoppel argument in support of his first cause of action.

### 2. Plaintiff Has Failed to State a Claim

As an additional matter, the Court notes that, even if this Court were to excuse Plaintiff from the requirement that he exhaust his administrative remedies, Defendants have effectively shown that Plaintiff has failed to state a valid claim for estoppel.

Although the Ninth Circuit does allow equitable estoppel claims to proceed against ERISA benefit plans in some circumstances, the availability is "severely restricted." *Kaiser Permanent Employees Pension Plan v. Bertozzi*, 849 F. Supp. 692, 697 (N.D. Cal. 1994). In the context of an ERISA plan involving multiple employers, estoppel claims face a particularly high hurdle. *See Greany v. Western Farm Bureau Life Ins. Co.*, 973 F.2d 812, 822 (9th Cir. 1992). As stated by the Ninth Circuit in *Greany*, "[a] plaintiff cannot avail himself of a federal ERISA estoppel claim based upon statements of a plan employee which would enlarge his rights against the plan beyond what he could recover under the unambiguous language of the plan itself." *Id.*

To state a claim for estoppel, a plaintiff must show the following: (1) that the party to be estopped knew the relevant facts; (2) that the party to be estopped intended that its conduct would be acted on or acted in a way that the plaintiff had a right to believe it was so intended; (3) that the plaintiff was ignorant of the true facts; and (4) that the plaintiff relied on the former's conduct to his injury. *See*

*Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1096 (9th Cir. 1985). A plaintiff must also be able to prove that: (1) the provisions of the plan at issue were ambiguous, such that reasonable persons could disagree as to their meaning or effect, and (b) that representations were made to him involving an oral interpretation of the plan. *Greany*, 973 F.2d at 821. Unless all of these elements are met, a plaintiff does not have a viable equitable estoppel claim. *Id.* Here, Plaintiff has not met the required elements of estoppel.

### a. Knowledge of the Relevant Facts

First, as previously discussed, *supra*, Plaintiff concedes in his Opposition that Defendants did not have knowledge of the relevant facts. *See* Opp. at 3:22. Further, Plaintiff's contradictory statement that "Defendants also acquired knowledge of the relevant facts in a series of conversations between Plaintiff, Western Vice-President Brad Jones, and the Board of Trustees," *see* Opp. at 5:10-12, is belied by the fact that Plaintiff has amended his complaint *three* times and has not once set forth a single fact that the Trustees had knowledge of the relevant facts concerning Plaintiff's estoppel claim when it denied his claim for benefits. Further, as Plaintiff's Third Amended Complaint makes clear that Plaintiff's September 2002 discussions concerned his desire to work in a new capacity with *Western*, Plaintiff has not shown that the Trustees were aware that Plaintiff intended to accept employment with an entirely *different employer*. Absent such allegations, the Trustees cannot be charged with knowledge of the facts relevant to Plaintiff's estoppel claim.

### b. Intent to Induce Reliance

Second, Plaintiff has not adequately alleged that Defendants acted with the intent to induce his reliance. Plaintiff contends in his Opposition that he has satisfied the second element of an estoppel by alleging: (1) that Defendants orally represented to him that they would define the relevant terms of the Plan in response to his request, and failed to do so; and (2) that Defendants had always intended to deny him benefits. However, merely alleging that the Defendants made certain oral representations regarding the definitions of the Plan is not enough to satisfy this element because Plaintiff's allegation that the Trustees always *intended* to deny Plaintiff's claim for benefits is entirely conclusory and is not supported

12

by the other applicable facts.

Further, although Plaintiff contends that he should be granted "leniency" in pleading intent to induce reliance, the authorities Plaintiff cites in support of this proposition are inapposite. Indeed, in the first case cited by Plaintiff, *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988), the court found that the explicit language of the summary plan description was misleading *and* that the participant had received communications from the plan or its representatives *affirming his interpretation* of the relevant plan term. *Id.* at 136-37. In contrast, here, Plaintiff has merely alleged that he sought clarification of the terms of the Plan, did not receive an answer before he lost his job at Western and accepted new employment at Evolution, and that Defendants' failure to respond to his inquiry before those events occurred demonstrates that the Defendants "intended" for him to rely on their silence.

Plaintiff's citation to *McKnight v. Southern Life and Health Ins. Co.*, 758 F.2d 1566, 1569-71 (11th Cir. 1985) is similarly unavailing. Like *Edwards,* the *McKnight* case concerns conflicting plan documents and a participant's right to rely on the summary plan description. *Id. McKnight* does not discuss a participant's alleged reliance on *silence* in response to an inquiry, which is the case here. As such, *McKnight* does not provide support for the proposition that the Court should "leniently" read Plaintiff's allegations as sufficiently establishing that Defendants intended for Plaintiff to take action in reliance on their silence.

### c.    **Ignorance of the True Facts**

Third, to establish that he justifiably relied on Defendants' alleged actions, Plaintiff must prove that he was "ignorant" of the true facts relevant to his claim for benefits. *See, e.g., Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1095 (9th Cir. 1985). Here, however, Plaintiff has admitted that he "knew there was a possibility that Defendants would deny him benefits." This admission is further evidenced by Plaintiff's letter in September 2002, in which he sought to "clarify" whether his new employment would disqualify him from receiving a service pension. Based on these admissions, it is clear that Plaintiff was *not,* in fact, ignorant of the true facts.

13

### d. Detrimental Reliance

Fourth, Plaintiff has not sufficiently alleged reasonable and detrimental reliance on Defendants' behavior. For there to be detrimental reliance, Plaintiff must have made a choice that resulted in some detriment to him. Here, however, Plaintiff admits that he did not leave Western by choice, but instead left because the company went out of business. This admission directly conflicts with Plaintiff's theory that Defendants *induced* Plaintiff to leave his job at Western. Moreover, Plaintiff still has not identified any detriment that he has suffered as a result of his actions. As Defendants point out in their Motion, Plaintiff still remains eligible for a Service Pension, and will be entitled to the Service Pension when he fulfills all of the relevant criteria in the Plan.

### e. Oral Representations Regarding the Plan

Fifth, Plaintiff has not shown that oral *representations regarding the Plan* were ever made to him. Instead, Plaintiff has alleged that certain oral conversations took place concerning his desire to retire from Western. Even construing these allegations in the light most favorable to Plaintiff, the most that Plaintiff has established is that he was informed of the procedure to be followed in order to obtain the information he was seeking. Such conversations are not a valid basis for an estoppel claim. *See Greany*, 973 F.2d at 821-22 (requiring an oral *interpretation* for an estoppel claim and holding that a mistake in referring to an outdated form to determine eligibility was not a plan interpretation).

Because Plaintiff has not stated a viable estoppel claim, Defendants' Motion is hereby GRANTED on this basis as well.

### CONCLUSION

IT IS HEREBY ORDERED THAT Defendants' Motion for Partial Dismissal [Docket No. 32] is GRANTED. Plaintiff's SECOND CAUSE OF ACTION is hereby DISMISSED WITH PREJUDICE. Plaintiff may NOT file another amended complaint without first seeking leave of Court.

IT IS FURTHER ORDERED THAT the Case Management Conference currently scheduled for **January 31, 2006 at 1:00 p.m.** is VACATED. The parties are directed to appear for a telephonic Case Management Conference on **Thursday, February 23, 2006 at 3:15 p.m.** The parties shall **meet and**

1 **confer** prior to the conference and shall prepare a joint Case Management Conference Statement which
2 shall be filed no later than ten (10) days prior to the Case Management Conference.  Plaintiff shall be
3 responsible for filing the statement as well as for arranging the conference call.  All parties shall be on
4 the line and shall call (510) 637-3559 at the above indicated date and time.

5      IT IS SO ORDERED.

6 Dated: 1/30/06                                                  *Saundra B Armstrong*
7                                                                                SAUNDRA BROWN ARMSTRONG
                                                                                       United States District Judge